## UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF MICHIGAN
## SOUTHERN DIVISION

JAMAL SALEH and MED PRO HEALTH, LLC,

   Plaintiffs,      Case No.

             Hon.

v.

MEDICAL MARKETING MANAGEMENT,
LTD., d/b/a HONOR MEDICAL STAFFING,
AND COREWELL HEALTH, f/k/a SPECTRUM
HEALTH,

   Defendants.

---

David Nacht (P47034)
NACHTLAW, P.C.
*Attorney for Plaintiffs*
501 Avis Dr., Ste 3
Ann Arbor, Michigan 48108
(734) 663-7550
dnacht@nachtlaw.com

---

## <u>VERIFIED COMPLAINT AND JURY DEMAND</u>

  NOW COMES Plaintiffs DR. JAMAL SALEH and MED PRO HEALTH, LLC, by and through their attorneys NACHTLAW, P.C., and hereby allege as follow:

## INTRODUCTION

  1. Plaintiff Dr. Jamal Saleh (hereinafter referred to as "Dr. Saleh") is a dedicated, passionate physician.

2.     After receiving his medical degree from the Medical College of Ohio, now known as University of Toledo College of Medicine and completed his residency in internal medicine, Dr. Saleh has taught medicine and practiced in multiple hospitals.

3.     Until recently, he was working on a contract basis for Defendant Corewell Health f/k/a Spectrum Health (hereinafter referred to as "Spectrum") through Defendant Medical Marketing Management, LTD., d/b/a Honor Medical Staffing (hereinafter referred to as "Honor Medical").

4.     Plaintiff Med Pro Health LLC (hereinafter referred to as "Med Pro") is Dr. Saleh's corporate entity for his contract work.

5.     Dr. Saleh worked tirelessly to provide quality medical care to all his patients.

6.     In terms of assisting his team, Dr. Saleh regularly offered to work additional shifts in additional hospitals to keep hospitals properly staffed.

7.     Dr. Saleh, in addition to doing his job, was vigilant of shortcomings in patient care and diligently reported these issues to the administration.

8.     His reward for protecting his patients? Unexpected and untimely firing.

9.     Dr. Saleh was terminated for standing up for his patients and bringing valid complaints to the administration's attention.

10.     Plaintiffs bring this action against Defendants for Breach of Contract,

Defamation, Tortious Interference with Contract, and Tortious Interference with Business Relations.

## PARTIES, JURISDICTION, AND VENUE

11.    Plaintiff Dr. Saleh is a resident of Perrysburg, Ohio, and had a former contractual and business relationship with Defendants.

12.    Plaintiff Med Pro is an Ohio limited liability company and had a former contractual and business relationship with Defendants.

13.    Defendant Honor Medical is a domestic profit corporation with its resident agent located in Southfield, Oakland County, Michigan.

14.    Defendant Spectrum is a not-for-profit health system with its primary offices located in Grand Rapids, Kent County, Michigan.

15.    Jurisdiction is appropriate in this court pursuant to the diversity jurisdiction provisions of 28 U.S.C. §1332 and the supplemental jurisdiction provisions of 28 U.S.C. §1367.

16.    The amount in controversy exceeds $75,000 exclusive of costs and attorney fees.

## FACTS

17.    Plaintiff Jamal Saleh, MD, FACP, is a board-certified physician in internal medicine.

18.     Dr. Saleh was awarded the title of Fellow in the American College of Physicians ("FACP").

19.     FACP is a peer-reviewed and peer-supported credential that is a public reflection of excellence within the internal medicine profession.

20.     It signifies an ongoing dedication to the profession of internal medicine, the patients, and the communities.

21.     Dr. Saleh earned his M.D. from the Medical College of Ohio, now known as the University of Toledo College of Medicine.

22.     While studying in medical school, Dr. Saleh had the opportunity to participate in off-site rotations in radiology at two esteemed institutions: the University of Michigan in Ann Arbor, Michigan, and Brigham's & Women's Hospital in Boston, Massachusetts.

23.     Brigham's & Women's Hospital is globally recognized for its expertise in nearly all aspects of adult medicine.

24.     It is a 793-bed teaching facility affiliated with Harvard Medical School.

25.     Dr. Saleh's performance at both these institutions was outstanding, earning him an "honor" for the rotation and excellent reviews.

26.     Dr Saleh then completed an internship and residency in internal medicine at the University of Toledo Medical Center and was recipient of the prestigious Joseph Shapiro Award for Student Teaching.

27.     Dr. Saleh has worked and gained significant experience as an Academic Hospitalist at the University of Toledo Medical Center, a private practice physician in a group practice in the role of a nocturnist, and as a hospital employed physician.

28.     On February 17, 2022, Dr. Saleh entered into an Independent Contractor Agreement with Defendant Honor Medical Staffing. **(Exhibit 1)**

29.     Dr. Saleh's contract with Defendant Honor Medical provided that the Agreement would remain in full force and effect until one year from February 17, 2022.

30.     The contract provided that Honor Medical could terminate Dr. Saleh's contract or assignment only upon the following circumstances: "(a) breach by a Contractor of its duties under this Agreement; (b) denial, revocation, suspension, surrender of Contractor's privileges at any health care facility, disciplinary action by any state board or federal agency; (c) Client's request for removal of Contractor for reasons relating to professional competence or integrity; or (d) discovery by Company that Contractor provided incomplete or inaccurate information on its application or credentialing material provided to Company."

31.     Honor Medical Staffing contracted with Defendant Spectrum Health to provide *locum tenens* physician services.

32.     Dr. Saleh was contracted to provide services to Spectrum Health Hospitals from April 5, 2022, through December 31, 2022, pending negotiations for

future dates.

33.    Dr. Saleh was credentialed and part of the medical staff at Spectrum Butterworth Hospital in Grand Rapids, Michigan; Spectrum Big Rapids Hospital in Big Rapids, Michigan; Spectrum Zeeland Hospital in Zeeland, Michigan; Spectrum United Hospital in Greenville, Michigan; Spectrum Pennock Hospital in Hastings, Michigan; and Spectrum Gerber Hospital in Fremont, Michigan.

34.    Dr. Saleh regularly went above and beyond the basic standards of care to provide assistance to patients and medical facilities.

35.    While other *locum tenens* physicians declined to work at smaller regional hospitals with lower-quality accommodations, Dr. Saleh consistently made himself available to whichever hospital needed help, no matter how short the notice.

36.    Throughout his employment with Defendants, Dr. Saleh received regular praise and positive feedback from hospital staff.

37.    He would take it on upon himself to verify he was meeting Defendants' expectations, like on May 31, 2022 when he proactively requested feedback.

38.    He went above and beyond to be a cooperative member of the team.

39.    He took the initiative to text Annica Waalkes and offer himself to fill any employee shortages.

40.    As a result, Jennifer Seifert secured privileges for Dr. Saleh for two days at Spectrum Health United.

41.     Additionally, he made himself available for last-minute shifts as well.

42.     Unfortunately, Dr. Saleh began to observe and experience issues with patient care and communication among staff at Spectrum Health hospitals.

43.     He had already previously reported a similar location with Spectrum's Big Rapids location.

44.     The staff then failed to carry out Dr. Saleh's orders regarding care of this patient. Instead of seeking clarification, the staff submitted a complaint about Dr. Saleh to hospital administration.

45.     Dr. Saleh reported to Dr. Waalkes about the toxic culture at Spectrum, including the way patients were cared for and the way Dr. Saleh was being treated.

46.     Dr. Saleh also observed that when he cared for patients with power of attorney or guardians and called those individuals to update them on the patients' status, they often complained that no one else from the hospital had bothered to update or check in with them.

47.     On or about September 6 and 7, 2022, Dr. Saleh reported to Defendant Spectrum's ethicist a patient was held in violation of protocols against her will.

48.     Dr. Saleh observed a litany of failures to meet basic standards of patient care.

49.     Dr. Saleh attempted to bring his concerns about these issues to both the Spectrum Health administration and Honor Medical Staffing.

7

50.    However, both entities routinely dismissed his concerns.

51.    Instead of addressing his concerns, Defendants began to retaliate against Dr. Saleh.

52.    Throughout the month of September of 2022, Dr. Saleh reported to Jeanne Mikiczenko, his main point of contact at Honor Medical Staffing, that he believed Spectrum Health was jeopardizing patient care and his own medical license by disregarding his treatment recommendations.

53.    Dr. Saleh also took the opportunity to bring up his concerns that Spectrum harbored a bully culture that was toxic and unacceptable and that he himself felt bullied.

54.    His concerns were not adequately addressed.

55.    Dr. Saleh additionally brought up concerns about not being adequately housed, as was required by Defendant Honor.

56.    The issues with his housing affected his ability to rest and take care of himself.

57.    On or about October 2022, Dr. Saleh was on the phone with an ER physician working at Big Rapids regarding a possible admission.

58.    Dr. Saleh was doing his due diligence as requested by the hospitalist staff at Big Rapids not to admit complex patients who may need consults or transfer because they only had capabilities for general surgery at the time.

8

59. Dr. Saleh requested that the ER physician check with the transfer center to see if the patient needed to be transferred per the instructions of the hospitalist staff.

60. After Dr. Saleh finished his request, the ER physician erroneously thought she had disconnected the phone line.

61. Dr. Saleh overhead her talk disparagingly about him to other ER staff, saying words to the effect of "I am not impressed, he cannot take care of a stable patient?" "Do not help Dr. Saleh" "I am making this call, then it's his problem."

62. This unprofessional behavior had the potential to endanger patients if providers failed to communicate effectively about patient care with one of their treating physicians.

63. On October 6, 2022, Honor Medical Staffing signed a document entitled "Locum Tenens Assignment Confirmation" which confirmed Dr. Saleh's assignments, hours, and pay rates at various Spectrum Health facilities through the end of December 2022.

64. The Locum Tenens Assignment Confirmation document provided that "Medical facility/practice and medical professional agree to give a minimum of 30 days' notice before cancellation of any part of this assignment."

65. On or about October 10 and 11, 2022, Dr. Saleh raised with Defendant Spectrum the concern once again that he was not being allowed to provide the proper

medical care to his patients.

66.     On October 12, 2022, Defendant Honor Medical informed Dr. Saleh via phone that Defendant Spectrum had canceled his contract, terminated him, and removed him from the schedule.

67.     This communication indicated that this was a "final decision" and that "no appeal" was available.

68.     Dr. Saleh made attempts to request his personnel file and any and all feedback received regarding his performance.

69.     He did not receive these items; he was told he did not have a personnel file since he was not a full employee.

70.     On October 21, 2022, Dr. Saleh received a letter via email from Spectrum Health's Medical Staff Services informing him that Spectrum Health had "accepted the status of Voluntary Resignation as requested."

71.     The letter was dated October 26, 2022.

72.     However, Dr. Saleh had never voluntarily resigned.

73.     On November 7, 2022, Dr. Saleh had a conversation with Defendant Honor Medical CEO Langston Jones about the termination.

74.     He was told that the contract had been terminated due to "a patient safety issue."

75.     Dr. Saleh tried to clarify that *he* was the one who reported the patient

safety concern, not that he had caused one.

76.     Mr. Jones brushed of Dr. Saleh's words, stating that he was not present for the interaction and had no reason to doubt Defendant Spectrum.

77.     Mr. Jones also stated that Dr. Saleh was not "terminated" but that his shifts were cancelled.

78.     This contradicted the information already given by Defendant Honor Medical.

79.     When Dr. Saleh requested additional support for his termination, Mr. Jones stated that Defendant Spectrum canceled his shifts because of "physician competency and integrity."

80.     Dr. Saleh tried to dispute these baseless allegations, but Mr. Jones responded that "[he was] not going to spend [his] valuable time discussing this with [Dr. Saleh]."

## COUNT I—BREACH OF CONTRACT

81.     Plaintiffs incorporate the preceding allegations as if fully set forth herein.

82.     Plaintiffs' contract with Honor Medical provides that Honor Medical could terminate Plaintiffs' contract or assignment only upon the following circumstances: "(a) breach by a Contractor of its duties under this Agreement; (b) denial, revocation, suspension, surrender of Contractor's privileges at any health

care facility, disciplinary action by any state board or federal agency; (c ) Client's request for removal of Contractor for reasons relating to professional competence or integrity; or (d) discovery by Company that Contractor provided incomplete or inaccurate information on its application or credentialing material provided to Company."

83.     None of the listed circumstances existed to trigger Honor Medical's right to terminate its contract with Plaintiffs, nor has Honor Medical identified any circumstance justifying its termination of the contract.

84.     Defendant Honor Medical breached its contract with Plaintiffs.

85.     As a direct and proximate result of Defendants' actions, Plaintiffs have been placed in financial distress and have suffered a loss of earnings and benefits, an impairment of earning capacity and ability to work and will so suffer in the future.

86.     As a further direct and proximate result of Defendants' actions, Plaintiffs have suffered emotional and physical distress, mental and physical anguish, loss of reputation, humiliation, and embarrassment, and will so suffer in the future.

87.     Plaintiffs are entitled to recover at least the monies he would have earned for working the remaining shifts for which he was already signed up for with Honor Medical.

## COUNT II – DEFAMATION
### (*As to Defendant Spectrum*)

88.     Plaintiffs incorporate the preceding allegations as if fully set forth herein.

89.     Defendant Spectrum Health, through its agents for whom it is vicariously liable, requested Honor Medical to remove Dr. Saleh for alleged reasons ostensibly related to Dr. Saleh's alleged "professional incompetence or integrity," as this formed the basis for Defendant Honor to breach its contract with Dr. Saleh for cause.

90.     In fact, there are no deficiencies related to Dr. Saleh's professional incompetence or integrity.

91.     Defendant Spectrum Health made unprivileged communications to a third party, Honor Medical, that were both false and defamatory about Dr. Saleh, through fault amounting at least to negligence.

92.     The false statements published by Defendant Spectrum Health to Honor Medical were defamatory *per se,* as the assertions of professional incompetence or integrity would harm Plaintiffs' business or profession. *Burden v. Elias Bros. Big Boys Rest.,* 613 N.W.2d 378, 381-82 (Mich. App. No. 204788 7/11/00), 240 Mich. App. 723.

93.     "Where defamation *per se* has occurred, the person defamed is entitled to recover general damages in at least a nominal amount… Where the defamatory

13

publication is 'maliciously published,' the person defamed may recover 'substantial damages' even where no special damages could be shown." *Whitemore v. Weiss,* 33 Mich. 348, 353 (1876).

94.    Whether nominal or substantial, where there is defamation *per se*, the presumption of general damages is well settled.  *McCormick v. Hawkins*, 169 Mich. 641, 650; 135 N.W.2d 1066 (1912).

95.    Furthermore, "where, as here, the defamation is slanderous *per se*, … damages for injury to feelings, otherwise called exemplary or punitive damages, may be found in the absence of damages of a pecuniary nature." *Poledna v. Bendix Aviation Corp.,* 360 Mich. 129, 145, 103 N.W.2d 789 (1960).

96.    Alternatively, Plaintiffs suffered actual harm resulting from Spectrum Health's publication of false and defamatory information, consisting at least in the loss of his contract with Honor Medical and the earning opportunities resulting therefrom.

97.    As a result of Defendant Spectrum Health's actions, Plaintiffs are entitled to recover damages for injuries sustained, including lost wages and earning capacity, reputation injury, physical and emotional distress, mental anguish, and other damages, for which Defendant  Spectrum Health is responsible.

## COUNT III – TORTIOUS INTERFERENCE WITH CONTRACT
### (*As to Defendant Spectrum*)

70.     Plaintiffs incorporate the preceding allegations as if fully set forth herein.

71.     Plaintiffs entered into a contract with Defendant Honor Medical, which in turn had a contract with Defendant Spectrum Health.

72.     The elements of tortious interference with contract in Michigan are "(1) a contract, (2) a breach, and (3) an unjustified instigation of the breach by the defendant." (See *Mahrle v. Danke*, 549 N.W. 2d 56, 60 (Mich. Ct. App. 1996)).

73.     Defendant Honor Medical breached its contract with Plaintiffs, as set forth above.

74.     This breach of contract resulted from the unjustified instigation of same by Defendant Spectrum Health, by providing Honor Medical with false and defamatory information about Dr. Saleh.

75.     As a result of Defendant Spectrum Health's actions, Plaintiffs have suffered damages in the form of lost income and earning capacity, emotional distress, mental anguish, and other damages, for which Defendant Spectrum Health is responsible.

## COUNT IV – TORTIOUS INTERFERENCE WITH BUSINESS RELATIONS
### (*As to Defendant Spectrum*)

76.    Plaintiffs incorporate the preceding allegations as if fully set forth herein.

77.    The elements of tortious interference with a business relationship in Michigan are "(1) the existence of a valid business relationship or expectancy that is not necessarily predicated on an enforceable contract, (2) knowledge of the relationship or expectancy on the part of the defendant interferer, (3) an intentional interference by the defendant inducing or causing a breach or termination of the relationship or expectancy, and (4) resulting damage to the party whose relationship or expectancy was disrupted." (See *Health Call of Detroit v. Atrium Home & Health Care Servs., Inc.,* 706 N.W.2d 843, 849 (Mich. Ct. App. 2005)).

78.    Without regard to the contract between Plaintiffs and Honor Medical, there existed a valid business relationship or expectancy between these two entities.

79.    Defendant Spectrum Health at all relevant times had knowledge of the relationship or expectancy between Plaintiffs and Honor Medical.

80.    Defendant Spectrum Health intentionally interfered with this business relationship or expectancy by inducing or causing a breach or termination of the business relationship or expectancy, as set forth above.

81.    As a result of Defendant Spectrum Health's actions, Plaintiffs, whose relationship or expectancy with Honor Medical was disrupted, have suffered

damages in the form of lost income and earning capacity, emotional distress, mental anguish, and other damages, for which Defendant Spectrum Health is responsible.

## RELIEF REQUESTED

Wherefore, Plaintiffs Dr. Saleh and Med Pro request that this Honorable Court grant the following relief:

a. Declare that the Defendants' practices and actions of Defendants constitute breach of contract, defamation, tortious interference with contract, and tortious interference with business relations;

b. Award Plaintiffs all lost wages and benefits, past and future, to which they are entitled;

c. Award Plaintiffs appropriate equitable relief;

d. Award Plaintiffs compensatory damages;

e. Award Plaintiffs exemplary damages;

f. Award Plaintiffs reasonable attorney fees, costs, and interest; and

g. Award such other relief as this Court deems just and proper.

Respectfully submitted,

**NACHTLAW, P.C.**

*/s/* David Nacht
David A. Nacht (P47034)
NACHTLAW, P.C.
Attorney for Plaintiff
501 Avis Drive, Suite 3
Ann Arbor 48108

dnacht@nachtlaw.com

Dated:  September 14, 2023

## VERIFICATION

I declare that the facts stated above are true to the best of my personal

knowledge, information, and belief.

_____
Jamal Saleh (Sep 13, 2023 20:51 EDT)
_____
JAMAL SALEH

**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

JAMAL SALEH and MED PRO HEALTH, LLC,

      Plaintiffs,                    Case No.
                                            Hon.

v.

MEDICAL MARKETING MANAGEMENT,
LTD., d/b/a HONOR MEDICAL STAFFING,
AND COREWELL HEALTH, f/k/a SPECTRUM
HEALTH,

      Defendants.

---

David Nacht (P47034)
NACHTLAW, P.C.
*Attorney for Plaintiffs*
501 Avis Drive, Suite 3
Ann Arbor, MI  48108
(734) 663-7550
dnacht@nachtlaw.com

---

**JURY DEMAND**

      NOW COMES Plaintiffs DR. JAMAL SALEH and MED PRO HEALTH,

LLC, by and through their attorneys, NACHTLAW, P.C., and hereby demands a trial

by jury in the above-captioned matter for all issues so triable.

                    Respectfully submitted,

                    NACHTLAW, P.C.

                    */s/* David Nacht

19

David A. Nacht (P47034)
NACHTLAW, P.C.
Attorney for Plaintiff
501 Avis Drive, Suite 3
Ann Arbor, MI  48108
dnacht@nachtlaw.com

Dated:  September 14, 2023

# Verified Complaint and Jury Demand

Final Audit Report                                                                    2023-09-14

| | |
|---|---|
| Created: | 2023-09-14 |
| By: | Karina Pimentel (Kalvarez@nachtlaw.com) |
| Status: | Signed |
| Transaction ID: | CBJCHBCAABAA2tYMmjlb-GBI3UieeyakUz1J-3NjHGC2 |

## "Verified Complaint and Jury Demand" History

🗎 Document created by Karina Pimentel (Kalvarez@nachtlaw.com)
2023-09-14 - 0:42:00 AM GMT- IP address: 69.239.141.142

✉ Document emailed to jsaleh421@yahoo.com for signature
2023-09-14 - 0:43:30 AM GMT

🗎 Email viewed by jsaleh421@yahoo.com
2023-09-14 - 0:44:14 AM GMT- IP address: 104.28.57.249

🖉 Signer jsaleh421@yahoo.com entered name at signing as Jamal Saleh
2023-09-14 - 0:51:04 AM GMT- IP address: 71.74.64.56

🖉 Document e-signed by Jamal Saleh (jsaleh421@yahoo.com)
Signature Date: 2023-09-14 - 0:51:06 AM GMT - Time Source: server- IP address: 71.74.64.56

✔ Agreement completed.
2023-09-14 - 0:51:06 AM GMT

**Adobe Acrobat Sign**